## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THOMAS POLINSKI** ) | |
| ) | |
| **Plaintiff,** ) | |
| **vs.** ) | |
| ) | **C.A. No. 10-** |
| **RIVERS EDGE NATIONAL LAND** ) | |
| **SERVICES, INC.,** ) | |
| **FRANKLIN FIRST FINANCIAL, LTD.,** ) | |
| ) | |
| **Defendants.** ) | **JURY TRIAL DEMANDED** |
| ) | |

## COMPLAINT – CLASS ACTION

## I.   PRELIMINARY STATEMENT

1.      This is a class action by homeowners seeking relief from the illegal practices of a real estate settlement services company Rivers Edge National Land Services, Inc. ("Rivers Edge"), and a mortgage company, Franklin First Financial, LTD. ("Franklin"), for violations of statutory and common law.

2.      Franklin and Rivers Edge entered into an agreement for the sole purpose of assessing Franklin customers with additional fees for services not performed as a way to pay referral fees and kickbacks at the expense of the borrower and in circumvention of the provisions of the Real Estate Settlement Procedures Act ("RESPA").

3.      Upon information and belief, under Defendants' scheme Franklin instructed and required those settlement companies closing Franklin mortgages in Pennsylvania to charge, among other things, notary fees, title examination fees and other settlement or closing fees in excess of that permitted by law for each settlement payable to Rivers Edge.  Such fees, however, are not permitted under state law and upon information and belief, Rivers Edge did not actually

provide any notary, title or closing services to Franklin mortgage clients who paid for such services.

4.      Rivers Edge appeared on the settlement documents in mortgage loans funded by Franklin as an entity that had performed bona fide notary and other services.  This, however, was false and untrue.  Even though Rivers Edge charged and was paid a notary fee or a title examination fee by the borrower that respectively ranged from $225 - $500, or more, for each loan settlement, Rivers Edge, in fact, performed little or no work in connection with the mortgage transactions.  Moreover, following the settlement, the fees – which were higher than the amount allowed by statute for notary or title examination services – or other consideration attributable to Rivers Edge, were split between Defendants with a portion split with and/or paid to Franklin.  The fees or other consideration was paid to Rivers Edge without disclosing to the borrower that the consideration was a kickback to reward Franklin with even higher fees for its mortgage loan.  In so doing, Rivers Edge and Franklin were able to systematically and deceptively hide and conceal the fact that Rivers Edge served no purpose in the transaction other than to:  (a) permit Franklin to pocket additional monies, paid by the borrower, while providing no additional goods or services; and (b) facilitate the payment of a referral fee and kickback at the increased expense of the borrower and in violation of the borrower's rights under state and federal law.

5.      Plaintiffs are classes of borrowers who entered into mortgage loan transactions using the mortgage lending services of Franklin where the HUD-1 Settlement Statement, or other document in the loan file, includes a charge for or payment to Rivers Edge for notary, title examination or closing services.

2

## II.      PARTIES

### A.      The Named Plaintiff

6.      At all times pertinent to this action Thomas B. Polinski resided at RR #2, Harveys Lake, Pennsylvania 18618.  Mr. Polinski entered into a mortgage transaction with Franklin as the lender and Rivers Edge providing notary services, in which the total closing costs for the $123,100 loan were approximately $12,517.17 – or more than 10% of the total loan.   The settlement date was March 6, 2009.

### B.      Defendants

7.      Defendant Rivers Edge is a corporation licensed to conduct title and mortgage loan closing services in Pennsylvania and around the country, with a home office at 77 Newbridge Road, Hicksville, New York 11801 and other offices at 1803 Park Center Drive, Suite 110, Orlando, Florida 32835.

8.      Defendant Franklin is a national mortgage bank, touts itself as "one of the nation's top-10 mortgage makers," and claims to be licensed in 41 states, according to its website, www.franklinfirstfinancial.com.  Franklin has offices at 445 Broadhollow Road, Suite 215, Melville, New York 11749.  Upon information and belief, Franklin funds thousands of mortgage loan closings each year in Pennsylvania and requires its title settlement service providers to pay illegal fees.

## III.      JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question), and 28 U.S.C. § 1367 (Supplemental Jurisdiction).

10.      Venue is proper in this District because, under 28 U.S.C. § 1391(b), the Defendants systematically and continually transact business in this District.

## IV.   <u>FACTS APPLICABLE TO ALL COUNTS</u>

11.     At all times relevant to this Complaint, Franklin has been in the business of providing mortgage loans.

12.     Upon information and belief, Rivers Edge is a preferred provider of notary, title and closing services for many Franklin transactions in Pennsylvania.

13.     In the regular course of its business, Franklin arranges and funds loans secured by real estate and, in connection with the performance of such services, receives fees either directly or indirectly, all of which must be disclosed to the borrowers under state and federal laws.

14.     Upon information and belief, as part of its communications with settlement service providers, in this regard, Franklin has encouraged them to enter into "strategic alliances" with Franklin.  On information and belief, these joint ventures are designed to encourage the referral of settlement service work to certain firms – like Rivers Edge – while permitting these firms to assess Franklin's customers substantial sums of money even if such sums, like the excessive notary, title and closing fees charged by Rivers Edge at Franklin's instruction, are not allowed under state law.

15.     A settlement service (or closing or escrow service) includes any service provided in connection with a prospective or actual settlement and includes the preparation and/or notarization of any documents related to the mortgage loan transaction.  *See* RESPA Reg. X, 24 CFR § 3500.2.

16.     The Pennsylvania legislature enacted a statute which limited the amount of the fee that a notary may charge (57 P.S. § 167):

> (a)     The fees of notaries public shall be fixed by the Secretary of the Commonwealth with the approval of the Attorney General.

(b)     A notary public shall not charge, attempt to charge or receive a notary public fee that is in excess of the fees fixed by the Secretary of the Commonwealth.

\*\*\*\*\*\*\*\*\*\*

(d)     The fee for any notary public employed by a bank, banking institution or trust company shall be the property of the notary and in no case belong to or be received by the corporation for whom the notary is employed

17.     Although Rivers Edge is identified on borrowers' "HUD-1 Settlement Statements" – which are the official and standard forms used in borrower real estate transactions to identify the charges and categories of charges resulting from the mortgage loan transaction – as receiving fees for the provision of notary services, in fact, Rivers Edge performs almost none, if any, of the notary work..

18.     In due course, Defendants Franklin and Rivers Edge organized a sham and phony arrangement to illegally gouge Franklin customers of more excessive fees than were already charged by Franklin and/or its preferred title settlement company partners.

19.     The unearned or excessive fees payable to Rivers Edge are reflected on a false and misleading HUD-1 Settlement Statement.

20.     The HUD-1 Settlement Statement ostensibly provided to Franklin's borrowers showed the charges paid for the settlement services that Rivers Edge would perform in respect of the mortgage loan transaction.  The HUD-1 Settlement Statement was designed to give the borrower false assurances that Rivers Edge was providing necessary, legal and legitimate notary, title and closing services in order to lull the borrower into a false sense of legitimacy, thereby preventing the borrower from contesting or questioning the charge or range of charges by Rivers Edge in connection with the mortgage loan transaction.  The HUD-1 Settlement Statement succeeded in this respect.

21.     The HUD-1 Settlement Statement in this and other similar transactions concealed the true nature of the relationship between the conspirators, concealed the fact of the bogus and/or excessive payments for certain of the services that would have normally been attributable to Franklin and its affiliated title settlement companies and concealed the fact that Rivers Edge and other entities were performing no services, or at the very least were performing redundant services, and supplying no added value in connection with the mortgage loan transaction.  The HUD-1 Settlement Statement also concealed the fact that, as a kickback, referral or split-fee, Franklin would be paid as an additional fee, above and beyond that already agreed to by the borrower for Franklin, a practice which the conspirators all knew to be illegal and in violation of sections 8(a) and (b) of RESPA, 12 U.S.C. §§2607 *et seq.*, as well as being an unfair and deceptive trade practice under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("CPL").

22.     In reliance upon these false and misleading statements and omissions, the borrowers executed the operative mortgage documents, including but not limited to the HUD-1 Settlement Statement.  Following such execution, the monies payable to Rivers Edge on the HUD-1 Settlement Statement were, in turn, paid in whole or in part to Franklin or other referring companies, or its agents or owners, for its or their benefit, even though Rivers Edge and others did not perform bona fide settlement services in respect of the mortgage loan transaction.

23.     The excessive and illegal fees paid to Rivers Edge and others were unearned referral fees and kickbacks and were paid at the expense and to the detriment of borrowers, in violation of state and federal law.

24.     Upon information and belief, following the settlement, the fees attributable to Rivers Edge and others – which were in addition to the customary and usual fees that Franklin

and its affiliated settlement companies charged for the settlement services work – were split between the Defendants with a portion split with, and/or paid to Franklin. Rivers Edge and Franklin, with intent to defraud, collected the fees without disclosing to the borrower that the monies were paid to reward Franklin for referring the services to Rivers Edge.

25.     Regardless, at no time are consumers advised that Franklin and Rivers Edge were charging them illegal fees in connection with the closing of their loans. Nor, upon information and belief, are consumers advised that the purpose of the illegal charge is to facilitate the payment of kickbacks and referral fees in connection with the mortgage loan. Nor could consumers, with reasonable diligence, ascertain either that the fees charged in connection with closing, were excessive or part of a scheme to pay illegal kickback and referral payments.

26.     In fact, upon information and belief, Franklin and Rivers Edge took affirmative steps to conceal these excessive and illegal charges from the consumers.

## V.     FACTS APPLICABLE TO NAMED PLAINTIFF

27.     In or about March 2009, Plaintiff Thomas B.. Polinski sought to refinance the first mortgage on his home located in Pennsylvania. Mr. Polinski was contacted by Franklin to obtain a new mortgage loan for approximately $123,100.

28.     Mr. Polinski closed on the loan, on or about March 6, 2009.

29.     The closing was conducted by a notary public, Franklin's and River Edge's agent, at a diner in Pennsylvania. In connection with the loan closing, Mr. Polinski signed a note for $123,100 and was given copies of other loan closing documents all prepared by Rivers Edge, which set forth the total costs and fees for Franklin's loan and services.

30.     As part of the closing services, Rivers Edge delivered to Mr. Polinski a packet of loan documents, including a false and misleading HUD-1 Settlement Statement and other loan

documents and disclosures.  As part of the closing services, Mr. Polinski was provided with closing documents including Rivers Edge's and Franklin's instructions which required that a notary fee of $350, a title examination fee of $225 (even though Mr. Polinski was also charged an excessive and illegal title insurance premium of $1,083.75 for a lenders policy to protect Franklin's interest) and fees for other closing services be paid to Rivers Edge.

31.     Upon information and belief, the HUD-1 Settlement Statement provided to Mr. Polinski was prepared by Rivers Edge at the instruction of Franklin and was designed, in part, to give false assurances that Rivers Edge was providing necessary, legal and legitimate notary, title and closing services to thus lull Mr. Polinski into a false sense of legitimacy, preventing the contesting or questioning the charge or range of charges by Rivers Edge and/or Franklin.  The document succeeded in this respect.

32.     The HUD-1 Settlement Statement concealed from the Plaintiffs the true nature of the relationship between the conspirators, concealed the fact of the unearned and inflated payments to Rivers Edge and concealed the fact that Rivers Edge was performing little or no services, or adding value to the performance of settlement, and supplying no goods in connection with Mr. Polinski's mortgage loan transaction.  The HUD-1 Settlement Statement also concealed from Mr. Polinski the fact that Rivers Edge would be paid fees as a kickback, referral or split-fee since Rivers Edge provided little or no actual services in the transaction.

33.     Rivers Edge received a payment from Mr. Polinski's transaction as a kickback or referral fee for providing Franklin with even more profit from the transaction.

34.     Even though Rivers Edge is identified on Mr. Polinski's HUD-1 as receiving a fee for all the notary, title and closing services, upon information and belief, if these services were

actually performed, they were done so by other persons or entities, their employees and/or agents.

35.     In connection with the activities giving rise to this action, the Defendants acted with malice, intent and knowledge, and with a wanton disregard for the rights of the named Plaintiff and other borrowers.

## VI.     CLASS ACTION ALLEGATIONS AND DEFINITION OF THE CLASS

36.     The named Plaintiff brings this action on behalf of himself and all other similarly situated individuals pursuant to Fed.R.Civ.P. 23:

> A.     All borrowers who entered into mortgage loan transactions using the mortgage services of Franklin where the HUD-1 Settlement Statement, or other document in the loan file, includes a charge for or payment to Rivers Edge.
>
> B.     All borrowers who entered into mortgage loan transactions for their Pennsylvania residence using Rivers Edge for notary services where an excessive notary fee was charged in violation of the Pennsylvania Notary Public Law, 57 P.S. § 167.
>
> C.     All borrowers who entered into mortgage loan transactions for their Pennsylvania residence using Rivers Edge for closing services where a title examination fee was charged in addition to title insurance.

Excluded from the classes are those individuals who now or have ever been executives of Defendants.

37.     The Classes, as defined above, are identifiable.  The named Plaintiff is a member of the Classes.

38.     The Classes consist, to Plaintiff's information and belief, of hundreds and perhaps thousands of individuals, and is thus so numerous that joinder of all members is clearly impracticable.

39.     There are questions of law and fact which are not only common to the Classes, but which predominate over any questions affecting only individual class members.   The predominating questions include, but are not limited to:

(a)     Whether Rivers Edge and other settlement service providers received illegal referral fees or kickbacks in respect of the mortgage loans involving Franklin;

(b)     Whether the Defendants split fees in connection with the origination of federally-related mortgage loans in violation of RESPA and Pennsylvania law;

(c)     Whether Rivers Edge and other entities were providing bona fide goods or services;

(d)     Whether the payments to Rivers Edge violate RESPA and Pennsylvania law;

(e)     Whether the Defendants were part of a conspiracy to defraud the Classes;

(f)     Whether the Defendants negligently misrepresented the nature of the charges for Rivers Edge, and

(g)     Whether the Defendants or any of them have entered into similar transactions with entities not herein above identified, for the purpose of receiving illegal referral fees or kickbacks in respect of mortgage loans.

40.     The claims of the named Plaintiff are typical of the claims of each member of the Classes, and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

41.     The prosecution of the separate actions by individual members of the class would create a risk of establishing incompatible standards of conduct for Defendants.

42.     Defendants' actions are generally applicable to the Classes as a whole, and Plaintiffs seek equitable remedies with respect to the Classes as a whole.

43.     Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Classes, and a class action is the superior method for fair and efficient adjudication of the controversy.

## COUNT I – VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C. §2607
### (All Defendants:  All Classes)

44.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth again herein.

45.     Throughout the class period, the Defendants procured and/or provided closing, title or settlement services in respect of residential mortgage loans, including "federally related mortgage loans" as that phrase is defined by RESPA at 12 U.S.C. § 2602(l) and at 24 C.F.R. § 3500.2(3), to the named Plaintiff and other borrowers in Pennsylvania and elsewhere.  Upon information and belief, the Defendants procured mortgage loans and/or provided closing, title or settlement services for at least hundreds of mortgage loans in each of the last three years.

46.     At all times during the class period, Rivers Edge conducted the business of notarization settlement services as that phrase is defined by Regulation X at 24 C.F.R. § 3500.2, and contracted with the named Plaintiff and other class members.  As such, Rivers Edge provided to the Plaintiff and other class members real estate "settlement services" as that phrase is defined by RESPA at 12 U.S.C. § 2602(3) and 24 C.F.R. § 3500.2(16).

47.     Based upon the foregoing facts, the Defendants each violated RESPA with respect to Plaintiff and all other class members by giving, paying or receiving fees, kickbacks or other things of value to or from Rivers Edge, pursuant to an agreement or understanding that business

incident to or a part of a real estate settlement or closing services involving "federally related mortgage loans" would be referred to Rivers Edge by Franklin.

48.     The payments to Rivers Edge and other entities constituted a violation of section 8(a) of RESPA, 12 U.S.C. §2607(a), which prohibits the payment of referral fees or kickbacks in connection with the origination of federally-related mortgage loans.

49.     The payments to Rivers Edge and others also constitutes a violation of section 8(b) of RESPA, 12 U.S.C. §2607(b), which prohibits the splitting of fees in connection with the origination of federally-related mortgage loans.

WHEREFORE, Plaintiff prays that:

A.      Pursuant to 12 U.S.C. § 2607(d)(2), the Court award Plaintiff and the class members an amount equal to three times the amount of any and all payments to Rivers Edge and other entities in respect of each mortgage loan, as well as any and all other amounts or damages allowed to be recovered by RESPA;

B.      The Court award Plaintiff reasonable costs and attorney's fees; and

C.      The Court award Plaintiff such other and further relief as the Court deems just and proper.

D.      The Court permanently enjoins Defendants from the practices complained of herein.

## COUNT II
## MONEY HAD AND RECEIVED
### (All Defendants: Class B and C)

50.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth again herein.

51.     As set forth above, Defendants assessed and collected payments for notary and title examination services in amounts exceeding the maximum allowed by law.

52.     By doing so, Defendants have come into the possession of money in the form of payments for purported services that they had, and have no right to at law or in equity.

53.     It would be inequitable for Defendants to retain any such monies that they had no legal right to charge.

54.     As a consequence, Plaintiff and the members of the Classes have been damaged.

WHEREFORE, Plaintiff and the Classes pray that:

A.     The Court determine that this action proceed as a class action;

B.     Plaintiff and other members of the Classes recover damages determined to have been sustained by each of them and that judgment be entered against the Defendants for the amount determined, including pre-judgment interest;

C.     Plaintiff and the members of the Classes recover the costs and expenses of this suit, including reasonable attorneys' fees;

D.     The Court grant such other and further relief as the case may require, including equitable and/or injunctive relief.

### COUNT III – VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
#### (All Defendants: Class B and C)

### Pennsylvania Unfair Trade Practices and Consumer Protection Law ("CPL")

55.     Plaintiff hereby incorporates by reference each and every allegation contained in the foregoing paragraphs as if set forth fully herein.

56.     The purchase by Plaintiff and the members of the Class of notary fees and title examination fees constitutes the purchase of services primarily for personal, family or household

purposes under the Pennsylvania CPL.

57.     Plaintiff and Defendants are "person[s]" within the meaning of section 201-2(2) of the CPL.

58.     Section 201-2(4) of the CPL proscribes, *inter alia*, engaging in any "unfair methods of competition" or "unfair or deceptive acts or practices" either at, prior to, or subsequent to a consumer transaction.

59.     Section 201-2(4)(xxi) of the CPL prohibits engaging in deceptive conduct which creates a likelihood of confusion or of misunderstanding.

60.     The actions of Defendants, as aforesaid, constitute unfair methods of competition, unfair or deceptive acts and practices and deceptive conduct which create a likelihood of confusion or of misunderstanding under the CPL.

61.     Plaintiff and the Classes had a special relationship with Defendants and their agents based on the Defendants' mastery of and influence over the mortgage closing transactions.

62.     Defendants deceptively and falsely certified on the form HUD-1 Settlement Statement, required in every residential real estate closing, that "The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement."

63.     Plaintiff and the Class justifiably relied upon the Defendants' sophistication and knowledge concerning applicable notary fees and title examination fees in Pennsylvania and the Defendants' written representations in the form HUD-1 Settlement Statements that Plaintiff and the Classes were being charged "true and accurate" fees and charges under law.

64.     Under the circumstances described herein, such reliance may be inferred through

the implausibility that Class members entitled by law to a certain fee would voluntarily choose to pay a higher fee for the same service.

65.     Defendants committed a *per se* violation of the CPL by charging and collecting an amount for notary fees and title examination fees in excess of that allowed under Pennsylvania law.

66.     By reason of the Defendants' actions, Plaintiff and the Class have suffered ascertainable losses of money or property.

67.     By virtue of the violations of law as aforesaid, and pursuant to the CPL, Plaintiff and the Class are entitled to an award of actual damages or one hundred dollars ($100.00), whichever is greater, as well as treble damages, reasonable attorneys' fees and costs of suit.

WHEREFORE, Plaintiff, on behalf of himself and all other individuals similarly situated, respectfully requests this Court to enter judgment in his favor, and against Defendants, and Order the following relief:

A.     A determination that this action may proceed and be maintained as a class action.

B.     A permanent injunction against Defendants from violating the CPL in the future.

C.     Actual, statutory, and treble damages pursuant to section 201-9.2 of the CPL, together with an award of reasonable attorney's fees and costs of suit to Plaintiff and the Class pursuant to the CPL.

D.     Disgorgement of all funds wrongfully collected, together with such amounts as have accrued, at the applicable judgment rate of interest from the time of such wrongful collection until date of judgment, and award of such disgorged funds to Plaintiff and the Class.

E.     Such other and further relief as is necessary and just.

## COUNT IV – NEGLIGENT MISREPRESENTATION
### (All Defendants: All Classes)

68.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth again herein.

69.     Agents or employees of the Defendants negligently and recklessly made the false and misleading representations and omissions alleged herein, including but not limited to the representation that Rivers Edge performed notary services and title examination services applicable to Plaintiff's mortgage loan, and the charge for such services was legal, intending that Plaintiff reasonably rely upon the false and misleading representations and omissions to his detriment, which he did.

70.     As a direct and proximate result of the fraudulent statements, representations and omissions, Plaintiff was induced, *ab initio*, to enter into a mortgage loan that included a payment to an entity that performed no services and supplied no value in respect of the mortgage loan.

71.     Defendants, their agents or employees, owed a duty of care to Plaintiff.

72.     Defendants recklessly and negligently breached the duty of care they owed to Plaintiff by making false representations to Plaintiff and concealing material facts, as set forth herein

73.     Defendants knew, or had reason to know, that Plaintiff would reasonably rely on the representations and concealments which, as erroneous, would cause loss, injury or damage.

74.     Plaintiff and the Classes justifiably and reasonably took actions to their detriment as alleged herein, in reliance on the false representations and concealments.

WHEREFORE, Plaintiffs pray that:

A.     The Court award Plaintiff compensatory damages in an amount to be determined by the jury;

B.      The Court award punitive damages to be determined by the jury; and

C.      The Court award Plaintiff such other and further relief as the Court may deem just and proper.

## COUNT V -- CIVILCONSPIRACY
### (All Defendants:  All Classes)

75.      Plaintiff incorporates by reference the foregoing allegations as if fully set forth again herein.

76.      The Defendants conspired with each other by common agreement or understanding, for: (a) the unlawful purpose of depriving Plaintiff and Class members of their rights under the statutory provisions and common law, as alleged herein; and (b) the purpose of unlawfully depriving Plaintiffs and Class members of both their money and property.

77.      The Defendants, acting with each other, did unlawfully deprive Plaintiff and Class members of both their money and property and the rights alleged herein by the overt acts alleged herein, all of which were performed to advance the conspiracy.

78.      In furtherance of said conspiracy, the Defendants both individually and in concert committed the overt acts or omissions alleged herein, to the economic loss and injury of Plaintiff and Class members.

79.      The acts and omissions of the Defendants caused injury and loss to Plaintiff and the Classes.

WHEREFORE, Plaintiff prays that:

A.      The Court award Plaintiff compensatory damages in an amount to be determined by the jury;

B.      The Court award Plaintiff reasonable costs and attorney's fees; and,

17

C.     The Court award Plaintiff such other and further relief as the Court may deem just and proper.

**COUNT VI – AIDING AND ABETTING**
**VIOLATIONS OF PENNSYLVANIA'S NOTARY PUBLIC**
**AND CONSUMER PROTECTION LAWS**
**(Defendant Franklin:  Classes B and C)**

80.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth again herein.

81.     By instructing its settlement service providers to charge notary fees and title examination fees to Rivers Edge in excess of that allowed under the Pennsylvania Notary Public Law and other law, and providing legal and other opinions to settlement service providers that such payment arrangements were permissible under existing law, Franklin encouraged, incited, aided and abetted the act of the direct perpetrator of the legal wrong.

82.     Consequently, by assisting, supporting, and supplementing, instigating, advising and encouraging the efforts of the settlement service providers, including but not limited to Rivers Edge, to violate the Notary Public Law, Defendants are responsible for the underlying damages available to the Plaintiff and the Classes as if Franklin had performed the illegal acts itself.

WHEREFORE, Plaintiff prays that:

A.     The Court order that Defendants return to the Plaintiff and the members of the Classes all monies paid to Rivers Edge and other service providers, directly or indirectly, including all reasonable interest thereon;

B.     The Court order that Defendants forfeit to the Plaintiff and the Classes three times the amount of the notary, title examination and other improper fees collected;

C.     The Court award such other and further relief as the Court deems just and proper.

Respectfully submitted,

DONOVAN SEARLES, LLC

Date: March 2, 2010                  By:      *s/ David A. Searles*_____
                                              David A. Searles
                                              1845 Walnut Street, Suite 1100
                                              Philadelphia, PA 19103
                                              (215) 732-6067


                                              QUINN, GORDON & WOLF, CHTD.
                                              Richard S. Gordon
                                              Martin E. Wolf
                                              102 W. Pennsylvania Avenue, Suite 402
                                              Towson, Maryland  21204
                                              (410) 825-2300

                                              Attorneys for Plaintiff and the Classes